1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NORTHWEST ADMINISTRATORS,
INC.,

                              Plaintiff,

         v.

CROWN DISPOSAL COMPANY, INC.,
et al.,

                              Defendants.[1]

NO.  C16-792-JPD

ORDER GRANTING MOTION TO
TRANSFER VENUE

## I.       INTRODUCTION AND SUMMARY CONCLUSION

This matter comes before the Court on defendants' July 20, 2016 motion to transfer this

civil action to the United States District Court for the Central District of California pursuant to

28 U.S.C.  § 1404(a).  Dkt. 12.  Having considered defendants' motion, the opposition of

plaintiff Northwest Administrators, Inc. ("Northwest"), defendants' reply, the governing law,

and the balance of the record, the Court GRANTS defendants' motion to transfer this case to

---

[1] Defendants are THF Holding Co., a California corporation ("THF") formerly known
as Crown Disposal Company, Inc., and CR Maintenance Services, Inc. ("CRMS"), which is
formerly known as Community Recycling and Resource Recovery, Inc.  The complaint
properly named Crown Disposal Company, Inc. as a defendant, but erroneously referred to
CRMS as Community Renewable Energy Services, Inc.  Dkt. 1 at 2.  In any event, THF and
CRMS are considered a single entity, as they are operated under common control.

ORDER - 1

the U.S. District Court for the Central District of California.  Dkt. 12.

## II.   FACTUAL BACKGROUND

This case involves a contract dispute between plaintiff and defendants.  Plaintiff is the administrator and assignee of the Western Conference of Teamsters Pension Trust Fund (the "Trust Fund"), which is an unincorporated association operating as a trust fund pursuant to section 302 of the Labor Management Relations Act of 1947, as amended.  Dkt. 15 (*Ditter Decl.*) at ¶¶ 3-4.  The Trust Fund provides retirement benefits to eligible employees.  *Id*. at ¶ 6.  There are approximately 4,800 employer accounts with approximately 75 separate Teamster Local Unions throughout the 13 Western States participating in the Trust Fund.  *Id*. at ¶ 9.  The Trust Fund is an entirely separate and independent entity and is not affiliated with either the employers participating in the Trust Fund, or the unions representing employees covered by the terms of the Trust Fund.  *Id*. at ¶ 10.  The Trust Fund is governed by a Board of Trustees comprised of an equal number of Employer and Union Trustees.  *Id*. at ¶ 4.

Defendants THF and CRMS previously operated waste management, collection, sorting, recycling, composting, and disposal businesses, the primary facilities for which are all located in Sun Valley in Los Angeles County, California.  The Local 396 of the International Brotherhood of Teamsters (the "Local"), which is also located in Los Angeles County, provided various employees to the defendants.  Specifically, the work performed by the Local's members for the defendants primarily involved driving trucks to and from the defendants' facilities in Sun Valley, California.

Defendants and the Local entered into a collective bargaining agreement (the "Agreement"), in Los Angeles, California, on June 11, 2013.  Dkt. 13 (*Richardson Decl.*) at ¶¶ 3-4, Ex. A.  The Agreement provides that defendants will contribute to the Trust Fund on behalf of employees working in the bargaining unit represented by the Local.  Dkt. 15 (*Ditter*

Decl.) at ¶ 11.  Defendants made their contribution payments to the Trust Funds in Los

Angeles County, California, for work performed in that county pursuant to the Agreement.

Dkt. 13 (Richardson Decl.) at ¶ 4.  All of defendants' negotiations and dealings with the Local

took place in Los Angeles County, California.  Dkt. 13 (Richardson Decl.) at ¶ 6.

In addition to the Agreement, defendants and the Local were required to submit a labor

agreement to the Trust Fund which complied with the rules, regulations, and policies of the

trustees governing acceptance of payments from employers.  Dkt. 15 (Ditter Decl.) at ¶ 12.

Defendant and the Local were further required to execute the Trust Fund's Employer-Union

Pension Certification (the "Pension Certification"), which required defendants and the Local to

be bound by the Trust Fund's Agreement & Declaration of Trust (the "Trust Agreement").  *Id*.

at ¶ 13.  This fact is significant because Article IV, Section 4 of the Trust Agreement, which

governs "Collection Actions" related to the collection of employer contributions, provides as

follows:

> (b) The county in which the particular Employer Contribution is payable shall be a
> proper county in which to institute legal proceedings to collect delinquent Employer
> Contributions.

Dkt. 15, Ex. A at 15 (Trust Agreement).

On March 4, 2015, defendants sold their businesses to Recology Los Angeles, which is

wholly unaffiliated with any of the defendants.  As a result of this sale, plaintiff and the Local

claim that defendants withdrew from the Agreement, thereby incurring a withdrawal liability

of $1,021,074.79 and $204,214.96 in liquidated damages.[2]  Plaintiff asserts that the method for

calculating an employer's withdrawal liability requires an evaluation of the total amount

contributed under the Plan by all employers for the last five plan years ending before the

---

[2] Thus, the sale of defendants' businesses and assets which triggered defendants'
alleged liability under the Agreement also occurred in Los Angeles County.

ORDER - 3

withdrawal at issue.  Dkt. 15 (Ditter Decl.) at ¶ 20.  On December 10, 2015, plaintiff sent

defendants notice of its assessed withdrawal liability, as well as a payment schedule.  Dkt. 15,

Ex. D (Employer Withdrawal Liability Notice and Demand for Payment).

After defendants failed to make timely payments or initiate arbitration under the

Agreement, plaintiff initiated this action for immediate payment of the $1,021,074.79 in

withdrawal liability, $204,214.96 in liquidated damages, accrued interest, attorneys' fees and

costs.  Dkt. 1 at 5.  On July 20, 2016, defendants filed the instant motion to transfer this case to

the Central District of California because "this matter has no relation to the Western District of

Washington at Seattle other than the offices of Plaintiff," as the "Defendants, the Local and

virtually all material witnesses and documents [are] located in Los Angeles County, California

and the Central District of California."  Dkt. 13 (Richardson Decl.) at ¶¶ 3-6.

Although plaintiff concedes that the only connection this case has to Washington stems

from the fact that plaintiff, the Local's assignee, administers the Trust Fund from its office in

Seattle, Washington, plaintiff nevertheless argues that this fact should be accorded controlling

weight because the Western District of Washington is plaintiff's preferred forum.  Dkt. 15

(Ditter Decl.) at ¶ 4.  For example, plaintiff asserts that the parties' executed Pension

Certification was "accepted by the Trust Fund" at its administrative office in Seattle,

Washington, on October 9, 2003.  *Id*. at ¶ 15.   Similarly, after defendants and the Local

executed the collective bargaining agreement in California, "it was accepted by the Trust Fund

at its administrative office in Seattle, Washington on August 29, 2013."  *Id*. at ¶ 16.  Plaintiff

calculated defendants' withdrawal liability at its Seattle office, based upon records and data

maintained in this office, and the withdrawal liability letter was mailed to defendants from the

Seattle office on December 10, 2015.  *Id.* at ¶¶ 18, 20.

1    To date, defendants have not made any payments to the Trust Fund based on the

2    liability assessed by plaintiff.  *Id*. at ¶ 23.

3                    III.    DISCUSSION

4    A.    Standard of Review

5        Defendants move to transfer this action to the California district court pursuant to 28

6    U.S.C. § 1404(a), which states that "[f]or the convenience of parties and witnesses, in the

7    interest of justice a district court may transfer any civil action to any other district or division

8    where it might have been brought."  The purpose of this section is to "prevent the waste 'of

9    time, energy, and money' and 'to protect litigants, witnesses and the public against

10   unnecessary inconvenience and expense.'"  *Van Dusen v. Barrack,* 376 U.S. 612, 616 (1964)

11   (quoting *Continental Grain Co. v. The Barge FBL–585,* 364 U.S. 19, 26–27 (1960)).  The

12   statute displaces the common law doctrine of forum non conveniens with respect to transfers

13   between federal courts.  *See Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 843

14   (9th Cir. 1986).  Section 1404(a) is not, however, simply a codification of the common law

15   doctrine.  In passing § 1404(a), Congress "intended to permit courts to grant transfers upon a

16   lesser showing of inconvenience" than was needed for dismissal under the doctrine of forum

17   non conveniens.  *Norwood v. Kirkpatrick,* 349 U.S. 29, 32 (1955).

18       The statute has two requirements on its face: (1) that the district to which defendants

19   seek to have the action transferred is one in which the action "might have been brought," and

20   (2) that the transfer be for the convenience of parties and witnesses, and in the interest of

21   justice.  28 U.S.C. § 1404(a).

22       Here, there is no question that this action could have been brought in the California

23   district court.  The parties are diverse, the amount in controversy exceeds $75,000.  The

24

decision to transfer, then, turns on whether the Court finds such transfer to be proper under the "convenience of parties and witnesses" and "interest of justice" standards.

The burden is on defendants to demonstrate that the transfer is warranted. *Saleh, et al., v. Titan Corporation, et al.,* 361 F.Supp.2d 1152, 1155 (C.D. Cal. 2005). "In making a decision to transfer, a court must balance the preference accorded the plaintiff's choice of forum with the burden of litigating in an inconvenient forum. The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Gherebi v. Bush,* 352 F.3d 1278, 1302 (9th Cir. 2003)

In determining whether a transfer is appropriate, the Court must weigh numerous factors, including (1) the location where the relevant agreements or alleged events in the lawsuit took place; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the respective parties' contacts with the forum, and the relation of those contacts to the plaintiff's cause of action; (5) the difference in cost of litigation in the two forums; (6) the availability of compulsory process to compel attendance of non-party witnesses; and (7) the ease of access to sources of proof. *Jones v. GNC Franchising, Inc.,* 211 F.3d 495, 498–99 (9th Cir. 2000). Other relevant considerations, drawn from traditional forum non conveniens analysis, are (8) the pendency of related litigation in the transferee forum; (9) the relative congestion of the two courts; and (10) the public interest in the local adjudication of local controversies. *Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 843 (9th Cir. 1986). These factors shall be considered here under the statutory requirements of convenience of witnesses, convenience of parties, and the interests of justice.

B. <u>Convenience of the Witnesses</u>

In addition to the contracts executed by the parties discussed above, the parties assert that witnesses will be their primary source of proof in this case. The relative convenience of

the forum to witnesses, and especially non-party witnesses, is often recognized as the most important factor for a district court to consider in ruling on a motion under section 1404(a). However, neither party in this case has identified any specific individuals who would actually serve as witnesses at trial.

Without identifying any potential witnesses by name, defendants claim that *all* of the relevant witnesses from the defendants, as well as the Local, are located in or adjacent to Los Angeles County in the Central District of California.  Dkt. 12 at 5, 7-8.  As a result, defendants argue that keeping the case in the Western District of Washington at Seattle would unnecessarily inconvenience potential witnesses due to the greater distance to appear in court as well as for depositions.  Defendants claim that it would be less expensive and more expeditious if this case were transferred to the Central District of California.

Plaintiff also fails to identify any potential witnesses, but simply asserts that "all of plaintiff's witnesses and documents are located within the Western District of Washington." Dkt. 14 at 9.  Plaintiff does cite to the paragraph of Northwest Administrators Area Manager Donald Ditter's declaration stating that he personally "has custody of the Trust Fund's records and files," which suggests that Mr. Ditter may serve as a potential witness.  Dkt. 15 (Ditter Decl.) at ¶ 8.  Plaintiff also claims that this case is likely to be resolved at the summary judgment stage in light of defendants' failure to initiate arbitration, and therefore contends that convenience to witnesses should not be a factor that weighs heavily in the Court's analysis. Dkt. 14 at 10.

The Court finds it plausible that the majority, if not all, of the most relevant witnesses in this lawsuit reside in California, rather than in Washington, because the relevant work was performed in California, the employer contributions were paid in California, and the collective bargaining agreement as well as the other relevant contractual agreements entered into by the

parties were all negotiated and executed in Los Angeles County.  Plaintiff is the assignee of the Local, but the Local is the real party in interest, and it is located in the Central District of California.  Moreover, as defendants point out, the compulsory process to compel attendance of non-party witnesses who reside in Los Angeles County in California is unavailable in Washington, because this district is more than 1,000 miles away.  *See National Property Investors VIII v. Shell Oil Co.*, 917 F.Supp. 324, 328 (D.N.J. 1995) (noting that under Fed. R. Civ. P. 45(e), "a non-party may not be held in contempt for failure to obey a subpoena requiring a non-party to travel to a place more than 100 miles from the place he or she resides.").

Accordingly, the Court finds that transfer is favored based upon the convenience of the potential witnesses of the real parties of interest, defendants and the Local, which are located in California.  It is undisputed that defendants entered into the Agreement with the Local in the area of Los Angeles County, California, and this action stems from defendants' alleged withdrawal from  that Agreement.  Plaintiff has not produced any evidence to show that Washington is a more convenient forum from the witnesses' perspective.  The Court finds that California appears to be a more convenient forum for potential witnesses, as it is the location where the relevant agreements were executed and the alleged events took place.

C.   Convenience of the Parties

As noted above, defendants THF and CRMS, as well as the other true party in interest, the Local, are located in the Central District of California.  Moreover, defendants point out that the "contracts and alleged breach of contract allegedly giving rise to this case initially occurred in the Central District of California." Dkt. 12 at 7.  Defendants argue that they would be inconvenienced by a Washington forum not only because more witnesses are located in California, but because their representatives are located in California.

Plaintiff points out that the Local's claims have been assigned to plaintiff Northwest Administrators, which administers the Trust Fund from its office in Seattle, Washington. Dkt. 15 (Ditter Decl.) at ¶ 4. Plaintiff asserts that this case was filed in the Western District of Washington because the Western Conference of Teamsters Pension Plan is administered in this district by plaintiff. Dkt. 14 at 4. Plaintiff further contends that "the operative documents that are relevant are based in Seattle, Washington," such as "the agreements relevant to the assessment of withdrawal liability. *Id*. at 7-8.

Plaintiff also argues that in the ERISA context, a defendant seeking a transfer of venue has the additional burden of surmounting ERISA's special venue provision:

> Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.

29 U.S.C. § 1132(e)(2). Plaintiff argues that "the reason Congress provided multi-employer funds with a nationwide choice of forum is to allow them to protect their beneficiaries from the costs of far-flung litigation." Dkt. 14 at 5. Thus, plaintiff asserts that "plaintiffs choice of venue in the District where the Plan is administered weighs in favor of the Trust Fund's choice of venue." *Id.* at 8.

As a threshold matter, the Court acknowledges that plaintiff's choice of venue in the district where the Trust Fund is administered should be afforded some weight, especially in light of ERISA's special venue provision. ERISA does not, however, provide that a Trust Fund's choice of forum is determinative.

Here, the Court finds that other considerations outweigh the relative inconvenience to plaintiff of litigating this matter in California. Specifically, the Court is not persuaded that the ease of access to the physical sources of proof, *i.e*, the physical location of the documents at

ORDER - 9

issue, is a significant consideration in this case.  Documents are easily transferable in our electronic age, and this case is a dispute about contract payments (or lack thereof) to the Trust Fund.  There should be no difficulty transferring relevant documents in either electronic or physical form from Washington to California.  Thus, the fact that the relevant documents are physically located at Northwest's office in Seattle does not outweigh the fact that the majority of the party and non-party witnesses likely to testify at trial reside in California.  Although Northwest may need to have a custodian of the relevant contracts fly to California to testify at trial, plaintiff has not argued that this would be particularly costly or burdensome.

Accordingly, although plaintiff selected Washington as its choice of forum because the Trust Fund is administered from its Seattle office, the Court does not find that Washington is the most convenient forum for all the parties.

D.  <u>The Interests of Justice</u>

Defendants argue that the interests of justice favor transfer to the Central District of California.  Specifically, defendants assert that the courts' familiarity with the relevant law is a neutral consideration, as Washington and California are equally familiar with the federal law governing this case.  Although defendants concede that the Central District of California docket is more congested than the Western District of Washington at Seattle, defendants point out that there is a strong public interest in the local adjudication of local controversies.  In other words, there is a public interest in having this dispute decided "at home" in Los Angeles County, where it originated.

As a threshold matter, the Court rejects plaintiff's argument that the Agreement in this case is no longer a highly relevant document because defendants did not exercise their right to pursue arbitration, thereby "waiv[ing] any chance to now present a defense that could have been brought before an arbitrator."  Dkt. 14 at 6.  Although defendants' decision not to seek

arbitration under the Agreement may indeed have a significant impact on the merits of this case, it does not diminish the relevance of the Agreement itself as the primary document governing plaintiff and defendants' relationship and contractual obligations.[3]  The fact that the Agreement, along with the other contracts entered into by defendants and the Local, were negotiated and executed in Los Angeles County is therefore a highly significant fact that weighs in favor of transfer.

Moreover, plaintiff wholly fails to acknowledge the provision in the Trust Agreement that provides that venue for any collection action for Employer Contributions is proper in the county where the contribution payments were being made.  *See* Dkt. 15, Ex. A at 15.  As noted above, Article IV, Section 4 of the Agreement, which governs "Collection Actions," provides that "the county in which the particular Employer Contribution is payable shall be a proper county in which to institute legal proceedings to collect delinquent Employer Contributions." It is undisputed that defendants' contribution payments are payable in Los Angeles County, California, and not in Washington.  Finally, plaintiff cites to no authority holding that "acceptance of documents" by its administrative office carries any special weight in determining the appropriate forum.

Although the Court is cognizant that plaintiff will have witnesses from Seattle authenticate documents and verify the formula used to calculate the alleged withdrawal contribution, the bulk of witnesses, including non-party witnesses, likely to be called at trial will be from defendants and the Local.  The Central District of California also has a greater interest in the outcome of this dispute, as the work that was the subject of the collective

---

[3] Plaintiff and defendants argue at length regarding the significance of the collective bargaining agreement, as if they believe the "Collection Actions" venue provision cited by defendants appears in that agreement.  As discussed above, that venue provision appears in the Trust Agreement, and it is undisputed that the parties are bound by the Trust Agreement.

bargaining agreement was performed in that county and the contribution payments were made in that county.  Finally, the Court finds that the cost of trying this case in Los Angeles County would likely be substantially less than trying it at the U.S. District Court in Seattle.

## IV.    CONCLUSION

Accordingly, as the facts of this case bear little relation to a Washington forum, the Court finds that the convenience of potential witnesses and parties, as well as the interests of justice, favor transfer of this case to the Central District of California.  Defendants' motion to transfer venue pursuant to § 1404(a), Dkt. 12, is therefore GRANTED, and this case is TRANSFERRED to the U.S. District Court for the Central District of California.  The Clerk shall send a copy of this Order to both parties, close the case file, and notify the Clerk of the Court in that district.

DATED this 12th day of September, 2016.

_James P. Donohue_

_____
JAMES P. DONOHUE
Chief United States Magistrate Judge

ORDER - 12